## MIMS' ADM'R *vs.* MIMS.

[FINAL SETTLEMENT OF EXECUTOR'S ACCOUNTS.]

1. *Liability of executor for interest.*—An executor is chargeable with interest, on final settlement of his accounts, notwithstanding he may make the statutory affidavit to relieve himself, (Code, § 1813,) where it appears that he has retained the funds of the estate in his hands for an unreasonable length of time, and without sufficient excuse; as where a decree on partial settlement was rendered against him eleven years before, for the funds then in his hands, and the only litigation in which the estate was interested, subsequent to that time, was a controversy between the executor and some of the distributees, in which the latter sought to charge him with a slave which he had omitted from his inventory.

2. *Contest between executor and legatees, respecting correctness of inventory.* A contest between the executor and the legatees, respecting the correctness of the inventory returned by the former, ought properly to be made and determined at a regular settlement of the estate, when all the parties interested would be before the court; yet, if an issue is made up between them at any other time, and decided, the proceeding will not be held void for want of jurisdiction of the subject-matter.

3. *Allowance to executor for costs and expenses of suit.*—An executor is not entitled to a credit, on final settlement of his accounts, for counsel fees and costs incurred and paid by him in conducting a controversy with some of the legatees, respecting the title to a slave, which the

executor claimed in his own right, and which the legatees sought to make him include in his inventory.

4. *Presumption in favor of judgment.*—In a probate case, where the correctness of the ruling of the court below depends on the proof, and the record does not set out all the evidence that was adduced, the appellate court will presume that the decision of the court below was justified by the evidence.

APPEAL from the Probate Court of Monroe.

IN the matter of the estate of Britton Mims, deceased, on final settlement of the accounts and vouchers of the deceased executor, Stanford Mims, by his administrator, John DeLoach. The testator died in July, 1845. The time of the executor's death is nowhere stated in the record. A partial settlement was made by the executor in July, 1850, and another in December, 1861. The final settlement, from which this appeal was prosecuted, was made in September, 1864. The opinion of the court contains a sufficient statement of the material facts.

R. C. TORREY, for the appellant.

J. W. POSEY, *contra.*

JUDGE, J.—We will first dispose of the question involving the correctness of the several rulings of the court below, which resulted in charging the executor with interest, notwithstanding he sought to relieve himself therefrom by the statutory affidavit; and we will consider this question without reference to the sufficiency of the affidavit, which was excepted to, on the ground that it did not meet the requirements of section 1813 of the Code.

It appears that the testator, by his will, bequeathed certain specific property to particular persons, and directed that all the balance of his estate should be sold on a credit of nine months, and the proceeds divided amongst all his children. The will was admitted to probate in the month of August, 1845. The first partial settlement of which there is any mention, was made in July, 1850, near five years after the date of the probate of the will. On that settlement, there was a balance declared against the execu-

tor of more than seven thousand dollars. The next partial settlement was made in December, 1861; more than eleven years after the first had been made, and more than sixteen years after the date of the probate of the will. It was on the last partial settlement, that the executor endeavored to exonerate himself from the interest on four thousand dollars of the balance which had been ascertained to be in his hands on the first settlement; he claiming that, from July, 1860, he had retained the money, and had not used it for his own benefit.

There does not appear to have been any litigation pending against the estate, rendering it probable that the money would be needed; and we have looked in vain through the record for some good reason for this long retention of it. It is contended by counsel that a contest was pending during the whole period, in the probate court, on a suggestion that the executor had omitted to return in his inventory, as the property of the estate, a slave named John, who was claimed by the executor as his own property; and further, that Wright Mims, one of the legatees named in the will, had died, and that there was doubt as to whether his children would be entitled under the law to the legacy which had been bequeathed to their deceased father, the legatee having died before the testator; and that, for these reasons, the executor had set apart and retained the four thousand dollars. These reasons are wholly insufficient. No matter in whose favor the contest as to John might have terminated, no necessity could have been created by it, for the use of the funds of the estate; and the costs of the proceeding could not have been a proper charge against the estate, as is hereinafter decided. The pendency of this controversy might have been good cause for not making a final settlement of the estate, though a partial settlement and distribution of the fund might have been made; and as to the question whether the legacy to Wright Mims had lapsed or not, it was the duty of the executor to have had this determined within a reasonable time after the probate of the will. But there seems to have been no litigation, if there was any serious doubt upon this question, until the settlement in December, 1861, when it was brought before

the court, and decided, and no exception taken. Under the circumstances of this case, it could not be tolerated, by any principle of law or equity, that the interest in question should not be charged. Executors and administrators are trustees, and must be faithful in the execution of their trusts. If they retain money unreasonably, after they ought to pay it out to the rightful claimants, or to account to the court, they are guilty of a breach of trust; and this, though no actual use be made of the money.—2 Lomax on Executors, 339, 341, and authorities there cited. We undertake to lay down no general rule by which executors or administrators are to be charged with interest, notwithstanding they may make the statutory affidavit. Each particular case, as to this, must be governed by its own circumstances. In *Pearson and Wife v. Darrington*, (32 Ala. 227,) the administrator was held to be chargeable with interest, although the statutory affidavit had been made.

The view we have taken above, renders it unnecessary to decide upon the sufficiency of the affidavit in this case, or to pass upon the rulings of the court below on either of the settlements, relating to the item of interest; and it disposes of the first, second, third, fourth, fifth, and sixth assignments of error.

[2.] In July, 1848, a suggestion was made to the orphans' court of the county in which the administration of the estate was pending, by a portion of the legatees, that the executor had omitted to return in his inventory two promissory notes, which purported to have been executed by the said executor, to the said testator in his life-time. The executor appeared, and denied that he should be charged with the notes. An issue was then formed, and tried by a jury, both sides being represented by counsel; and the verdict of the jury was, that the executor did owe the amount of said notes. The court thereupon ordered, that he should be charged with the same; which was, in legal effect, an order that they should be charged against the executor in his inventory. The executor thereupon moved the court for a new trial, which was granted as to one of the notes, upon condition that the executor should agree to charge himself with the other. A day in October follow-

ing was then fixed by the court, for the new trial. In October, the parties again appeared before the court, and formed an issue, similar to the one above stated, relating to the note on which the new trial had been granted. The issue was submitted to a jury, and decided against the executor; and an order was made by the court, the legal effect of which was, that the executor should also be charged in his inventory with this note. The above-mentioned proceedings, it appears, were disconnected from any settlement of the estate. On the final settlement of the accounts of the deceased executor, by his administrator, the amount of these notes, with interest, was charged in the account against the deceased executor; and it is now contended that the orphans' court had no jurisdiction in the proceedings above named, because of their having been disconnected from any settlement of the estate.

This court decided, at an early period, that of such a proceeding, on the settlement of an estate, the orphans' court had ample jurisdiction.—*Dobbs v. Cockerham's Distributees*, 2 Porter, 328. And more recently, in a case which was three times before this court, in which was involved the identical question here presented, the action of the court each time upon the case was equivalent to an assertion that the court below had jurisdiction of the subject-matter, although disconnected from a settlement of the estate.—*Mims v. Sturdevant*, 36 Ala. 636. In the case last cited, the question of jurisdiction was distinctly made, but not decided; the court holding that the previous decisions in the case had virtually asserted the jurisdiction of the court below, and that such being the law of the case, the court was bound by it.

It would have been more regular, and doubtless the better practice, for the contest as to the truth of the inventory in the particulars specified to have been made and determined at a settlement of the estate, when all the parties in interest would have been represented, and concluded by the proceedings. But the fact that all the proper parties were not before the court, could not affect the jurisdiction as to the subject-matter. And from the ample jurisdiction which the orphans' court had, in all

matters pertaining to the administration of estates; and there having been no statute limiting the exercise of its jurisdiction in a contest of the truth of an inventory to the time of a settlement of the estate, we feel constrained to hold, that its action, in the proceedings before named, was not void for the want of jurisdiction. Consequently, the probate court did not err, in charging in the account against the deceased executor the amount of the two notes with interest; and we cannot say from the record, that more than the proper amount of interest was charged.

[3.] The executor had contested with some of the legatees, in the probate court, on an issue as to the truth of his inventory, by reason of his having omitted to return therein, as the property of the estate, a slave named John, who was claimed by the executor as his own property. On the settlement of the accounts of the deceased executor, his administrator moved the court to be allowed a credit for counsel fees and costs, which had been paid by the executor, in conducting the contest to establish his own right to the slave. It is difficult to conceive of any correct principle on which this credit should have been allowed. The expenses were incurred in litigation for the benefit of the executor personally, and against the interests of the estate; and the court did not err in refusing to allow the credit.—*Anderson v. Anderson,* 37 Ala. 683; 19 Ala. 268.

[4.] On the same settlement, the legatees moved the court to charge in the account against the deceased executor the amount of the hire for several years of certain slaves, and proved the value of the hire. The administrator resisted this motion, and introduced in evidence the will of the testator, by which it appeared that slaves of the same names had been bequeathed to the wife of the testator for life, and at her death to his daughters; and also proved that the widow of the testator, within twelve months from the date of the probate of the will, had filed in the probate court her written dissent therefrom. The court ruled in favor of the legatees on this motion. The bill of exceptions does not state that the evidence set out therein was all the evidence that was introduced on the hearing of the motion;

and it is a well-settled rule, that in such case, error cannot be imputed to the court below, the legal intendment being, that there was other and sufficient testimony before the court to justify its ruling.—*Ward v. Cameron's Adm'rs*, 37 Ala. 691; *McLemore v. Nuckolls*, 37 Ala. 662; *Morgan v. Morgan*, 35 Ala. 303.

It might be held, if the question was properly presented, that when one to whom a life-estate in property is given by will, with remainder over, waives, or from any other cause does not take the life-interest, that the remainder is accelerated, and vests in possession immediately; but we make no decision on this point, it not being properly presented by the record.

Having disposed of all the assignments of error, it results from what we have said that the decree of the probate court must be affirmed.