# Baker v. Keith.

72 121
103 617

*Statutory Real Action in nature of Ejectment.*

1. *Waiver of homestead exemption.*—Under the statute approved March 4th, 1876 (Code, § 2848), a waiver of a right of homestead exemption is required to be made "by a separate instrument in writing;" consequently, a waiver embodied in an ordinary promissory note, though attested by one witness, is invalid and inoperative.

2. *Contest of claim of homestead exemption; where tried.*—When a homestead is allotted to the surviving child of a decedent, by commissioners appointed by the Probate Court, and the allottment is contested by a creditor, that court has no authority to try the issue (Code, §§ 2838, 2841), but should certify it to the Circuit Court for trial at the next term.

3. *Remedy of creditor to enforce waiver.*—As to what is the proper remedy of a creditor, in whose favor a valid waiver of homestead exemption has been executed by a debtor since deceased, the waiver not having

[Baker v. Keith.]

been enforced during his life, and his estate, being declared insolvent, *quære ?* " Possibly legislation is called for on this subject."

4 *Homestead exemption in favor of decedent's minor child; how affected by insolvency of estate.*—Where a deceased debtor left no surviving widow, but a minor child as the only member of his family, such child had a right to occupy the homestead during minority, and, if the estate was declared insolvent during such minority, the homestead estate vested absolutely in the child, under the provisions of the act approved April 23d, 1873 (Sess. Acts, p. 64, § 15); but, if the child attained its majority before the estate was reported insolvent, the right of homestead terminated with its minority, and was not revived and enlarged into an absolute estate by the subsequent insolvency.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. WM. L. WHITLOCK.

This action was brought by William Baker, against Eliza Keith, Joseph Keith, Lewis Mallory, and Austin Caldwell, to recover the possession of a tract of land, particularly described in the complaint; and was commenced on the 7th February, 1880. The land sued for, which contained one hundred and sixty acres, belonged to one John Keith at the time of his death, which occurred on the 15th April, 1876; and each party claimed under him,—the plaintiff as a purchaser at a sale made by his administrator, under an order of the Probate Court rendered on the 12th June, 1879; and Eliza Keith, one of the defendants, claiming it as a homestead exemption, the other defendants being her tenants. Eliza Keith was a daughter of said John Keith, and was residing with him at the time of his death; she being then twenty years old, and the only member of his family. The estate of said Keith was declared insolvent by the decree of the Probate Court, on the report of the administrator, on the 1st May, 1877; but the record does not state when it was so reported by the administrator. On the same day (May 1st), a petition was filed by the administrator, alleging that said estate "has been declared insolvent," and asking the appointment of commissioners to set apart to said Eliza Keith such real and personal property as she might be entitled to; and commissioners were thereupon appointed on the same day, who made their report to the court on the 29th May, allotting to her the lands here sued for as her homestead exemption. This allotment was contested by Baker, the plaintiff in this action, "a creditor of said estate, and a claimant on a note made by said decedent waiving all exemptions, which had been duly filed as a claim against said insolvent estate." On "the trial of said contest," as the bill of exceptions recites, "the controversy being whether the said lands, so set apart to Eliza Keith, were liable to the payment of Baker's said note against John Keith; Baker insisted that said lands were liable to be sold to satisfy said note in his

[Baker v. Keith.]

favor, in which the benefit of all exemptions was waived by the maker, and the administrator insisted that said lands were not liable to be sold to satisfy said note;" and the court thereupon decreed and declared that the lands were subject to be sold for the payment of debts. On the 26th March, 1879, the administrator filed his petition in said Probate Court, asking an order to sell the lands for the payment of debts; and the order having been granted, the plaintiff became the purchaser at the sale, as above stated. The proceedings connected with the sale, it is stated, "were shown to be in all respects regular." The several orders of the Probate Court were proved on the trial, and the plaintiff's note against said decedent was produced and proved. On all the evidence adduced, the court charged the jury, "that they should find for the defendants, if they believed all the evidence;" and this charge, to which the plaintiff excepted, is now assigned as error.

JOHN T. HEFLIN, for the appellant.

BRADFORD & BISHOP, *contra*. (No briefs on file.)

STONE, J.—On the 13th day of March, 1876, John Keith executed a note to William Baker, by which he promised to pay him $444.52, one day after date, with interest from January 1st, 1876. The note contained this clause: "And as part of the consideration hereof, I hereby [waive] all right which I may have, under the constitution and laws of Alabama, to have any of the property of the said John Keith exempted from levy and sale under legal process." The execution of this paper by Mr. Keith was attested by a subscribing witness; and the question is made, whether this is a waiver of the homestead exemption. There can be no question, that the waiver would be sufficient, if the right depended alone on the constitution of 1875. But this note, with the attempted waiver, was executed March 13th. Nine days before that, the legislature, by act approved March 4th, 1876 (Pamph. Acts, 123; Code of 1876, § 2848), prescribed the manner in which such exemption should be evidenced. Its language is: "When such waiver relates to realty, it shall be made by a separate instrument in writing, and must be signed by both husband and wife, if the resident has a wife, and the execution of such instrument must be attested by one witness." The waiver in this case not being made "by a separate instrument in writing," it follows that it is insufficient and inoperative in all matters relating to the realty. Homestead being realty, and that being the question raised by this record, this cause must be determined as if there had been no attempt to waive the exemption.

[Baker v. Keith.]

John Keith died, intestate, April 25th, 1876, owning and re-
siding on the lands in controversy—one hundred and sixty
acres.   He left no wife surviving him, but it is not shown when
his wife died.   He left children, one of whom, Eliza S. Keith,
was then under age.   She reached her majority in July, 1876,
three months and some days after her father's death.   In May,
1877, after Miss Keith became of age, the estate of John Keith,
her father, was declared insolvent.   Baker's claim was duly
presented to the administrator, within eighteen months after
his appointment, and duly filed, verified as a claim against the
estate, within nine months after the declaration of insolvency.
The administrator filed his petition in the Probate Court, to ob-
tain an order to sell said lands for the payment of debts; ob-
tained the order, and sold the lands.   Baker became the pur-
chaser, and paid the purchase-money; the sale was reported to
the Probate Court, and confirmed; report made that the pur-
chase-money was paid; order granted that title be made to the
purchaser, and title made to him.   No question is raised here
as to the regularity of the proceedings in the Probate Court,
which resulted in the sale and conveyance to Baker.   They ap-
pear to be regular in form.   The present is a statutory real ac-
tion brought by Baker, founded on the title he thus acquired.

In May, 1877, under a petition by the administrator to the
Probate Court, three commissioners were appointed, who, among
other things, allotted to Eliza S. Keith the lands in controversy
as a homestead,—one hundred and sixty acres, valued at one
thousand dollars.   This allotment was reported to the Probate
Court May 31st, 1877.   William Baker contested the allowance of
said homestead claim before the Probate Court, whereupon the
probate judge ruled as follows:   "After due consideration of
the testimony offered in the matter of the contest as made by
William Baker, a creditor of said estate, and a claimant on a
note made by said deceased, waiving all exemptions . . . . . .
it appears to the court that the real estate of which said John
Keith was seized and possessed at the time of his death, is sub-
ject to administration, and to the payment of costs and ex-
penses of administration, and the payment of debts due by said
estate."   In acting on these exceptions, the Probate Court erred.
After the formation of the issue on the exceptions filed, that
issue should have been certified by the Probate Court to the
Circuit Court, to be therein tried at the next term thereof.
Code of 1876, § 2841.

We have shown that the waiver in this case is invalid as to
the lands.   If it had conformed to the statute, in what manner
could such liability be made available against the real estate of
a deceased debtor?   The statute has made provision for enforc-
ing the liability, when suit is brought and prosecuted to judg-

ment during the life of the debtor. The statute has not pro-
vided for the case, where the debtor dies before judgment. If
the estate be solvent, no difficulty can arise; for there can be
no need of resorting to the exempt property, for the payment
of debts. But, in case of insolvency, how is the exempt prop-
erty to be reached? The title even of exempt personal property
does not vest in the administrator, and the statutes furnish no
form of procedure for its sale. If the administrator apply for
an order to sell the exempt homestead, waiving all consideration
of the absence of power in the court to grant the order, he can
only obtain a general order to sell for the payment of debts;
counting, in such case, the proper expenses of administration,
as part of the debts for which he may sell. The power and
jurisdiction of the Probate Court, in this behalf, are purely
statutory, and that court can exercise no power in reference to
the sale of lands, or the settlement of insolvent estates, that are
not conferred by statute. Assets of estates, in the hands of the
administrator, are, it would seem, general assets for the payment
of general debts (with the exception of certain preferred debts,
prescribed by statute), and both the administrator and the Pro-
bate Court are without express power to apportion the assets
between the common debts, and those containing waiver of ex-
emptions.—*Tyson v. Brown*, 64 Ala. 244; *Steele v. Steele, Ib.*
438; *Miller v. Irby*, 63 Ala. 477; *Calhoun v. Fletcher, Ib.* 574.
Is there an implied power in such case? Possibly, legislation
is called for on this subject.

When Mr. Keith died, the exemption statute approved April
23d, 1873 (Pamph. Acts, 64), governed the question of Miss
Keith's homestead. It is contended for appellee that, under
section 3 of that statute, the real estate in controversy is abso-
lutely exempt from the payment of debts. Its language is,
"That the homestead of a family . . . of any resident of
this State, after his death, shall be exempt from the payment of
debts; *Provided*, such decedent leaves surviving him a widow
or child." In *Thompson v. Thompson*, 51 Ala. 493, the lan-
guage above copied was construed by this court. It was there
held that, to come within the statute, the child left surviving
must be under twenty-one years of age. We concur in this
construction, and think that sections 12, 14, 15 of the statute
demonstrate that our predecessors were right in their view.
The particular contention in this case is, that by the operation
of said section 3, the homestead became exempt from the pay-
ment of debts, but not from the law of descents, unless the es-
tate proved insolvent, when the surviving widow or minor chil-
dren, one or both as the case might be, would take in fee.
*Thompson v. Thompson, supra,* is relied on in support of this
view. The question in that case arose on personal property.

The principle decided was, that in case the estate was solvent, and left a balance for distribution, then the exempt personal property should be accounted for in hotchpot, in final distribution. That was expressly provided for in section 13 of the act. The statute, in terms, and absolutely, exempts the personal property enumerated from the payment of debts, in all cases where there is a surviving widow or minor child. The only account afterwards taken of it is, that in case the estate proves solvent, and a distribution is made, such exempt personal property becomes, and is estimated as, so much advanced to those who receive it, and to be accounted for as an advancement. The rule as to the homestead is different. The right of the widow and minor children is, *prima facie*, not a fee. It is only during the life of the widow, and the minority of the children. All else belongs to the estate, unless there is an insolvency. This residuum of title, or reversion, is as much property of the estate, as is the reversion after the determination of an estate in dower.

It is contended for the appellee, that because Mr. Keith's estate was insolvent, the exemption of the homestead, which otherwise would have continued only during the minority of Miss Keith, became thereby enlarged into a fee. Section 15 of the act of 1873 reads as follows: "That the homestead exempted for the benefit of the widow and minor child or children under this act, may be retained by such wife, or by such child or children, until it is ascertained whether the estate is solvent or insolvent; and if the estate is insolvent, shall vest in them absolutely. If the estate is solvent, the homestead shall be held, considered and treated as a part of the real estate of the decedent, without reference to this act." It will be observed, that this right to retain has for its subject the homestead exempted for the benefit of the widow and minor child or children. We can not think the legislature intended by this to enlarge the minor's *mere right to occupy*, beyond the period of minority. The purpose, we think, was, that this right to occupy, which, in the event the estate is solvent, determines when the occupant becomes twenty-one, shall be enlarged to an absolute title, in the event the estate proves insolvent. The purpose was to enlarge an existing estate or interest, not to create a new one, after the first had terminated. The estate in the present case, on the basis that the estate was solvent, was a right to occupy three months and eight days. That was the estate the statute provided for the enlargement of. At the time of its termination, July 23d, we are not informed the estate was insolvent. It may not have been insolvent. Destruction of property, depreciation in stocks or other securities, failures of debtors, and many possible events or casualties, may render estates insolvent, which were amply solvent at the time of decedent's death. So,

[Baker v. Keith.]

on the other hand, estates apparently insolvent, have been shown to be solvent, by a failure to establish claims against them. We think we do full justice to the claimant of homestead, when we hold, as we do, that an estate can not be regarded as insolvent, until it is so pronounced by judicial determination; and when so pronounced, it may relate back to the time of filing the report of insolvency, but certainly can extend back no farther. So, we hold, that the enlargement of the temporary right to occupy, into a fee, can not take place, unless the report of insolvency is made before the termination of the right to so occupy. It is only in such case that there is any right or interest to be enlarged by the happening of the insolvency. When the limited or qualified right expires before the insolvency supervenes, there is no estate left to be enlarged. Possibly, there might be cases of collusion, or fraud, which would work an exception to this rule; but this case requires no decision of that question.

The reasonableness of this interpretation will be much more manifest, when we inquire, what would be the result of the opposite view. The same language is employed, and in the same sentence, to define the rights of the minor child, and of the surviving wife. The words must receive the same construction in the one case as in the other. If we hold that, in the case of a minor child, the possession of the homestead is to be retained by such minor until it is ascertained whether the estate is solvent or insolvent, and this notwithstanding such minor may reach his or her majority long before the fact of solvency *vel non* is, or can be ascertained, how can this principle be made applicable to the widow? Her right to occupy the homestead continues, in all cases, during her life. How can that mere right to occupy be prolonged, so as to cover an additional period, while the question of the solvency of the estate may remain in doubt? Suppose she dies before that fact is ascertained; who is there to occupy during the doubtful period? And if she die while the estate is considered solvent, and, by some unforeseen event or disaster, it becomes necessary to have it declared insolvent, does a new right of homestead, overleaping the chasm, spring up in her heir at law? Such, it would seem, would be some of the consequences of holding that the right of the minor to occupy the homestead is prolonged beyond the period of minority, that it may be ascertained whether the estate is solvent or insolvent; or, the statute means one thing when applied to minors, and an entirely different thing when applied to the widow. We know of no canon which will authorize such interpretation. The chief policy of maintaining the right of homestead exemption after the death of the owner, is that the widow and minor child or children, in consideration

of their presumed helplessness, may have shelter and means of support. The constitution guarantees these, and the legislature is powerless to take them away. Any thing beyond them is mere legislative bounty. We find nothing to justify its extension in the present case. Miss Keith's homestead right did not extend beyond the time she attained her majority.

There being in this case no valid homestead exemption, the error of the judge of the Probate Court in himself setting aside the allotment, without referring it to the Circuit Court, worked no injury. And there being no homestead exemption in the way, the Probate Court had authority to grant the order of sale. The probate proceedings being regular, and title made to Baker, the purchaser, he established his right to recover the premises sued for. The Circuit Court erred in the charge given. It should have been in favor of the plaintiff.

Reversed and remanded.